Costas **THEODOROPOULOS** and Eleni
Theodoropoulos, nee Masouras,
Appellants,

v.

**THOMPSON–STARRETT COMPANY,**
Inc., a corporation, and Merritt-Chapman & Scott Corporation, a corporation,
Appellees.

No. 130, Docket 33688.

United States Court of Appeals
Second Circuit.

Argued Oct. 17, 1969.

Decided Nov. 17, 1969.

Francis D. Morrissey, Chicago, Ill. (Thomas F. Bridgman, Chicago, Ill., Gregor F. Gregorich, New York City, Thomas R. Nelson, Chicago, Ill., and Baker & McKenzie, New York City, on the brief), for appellants.

Charles Korn, New York City (Marvin S. Machson and Samuel Statler, New York City, on the brief), for Thompson-Starrett Co., Inc.

Ralph L. Ellis, New York City (Shea, Gallop, Climenko & Gould, New York City, on the brief), for Merritt-Chapman & Scott Corp.

Before FRIENDLY, HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

Costas and Eleni Theodoropoulos appeal from an order of November 15, 1968, dismissing their suit with prejudice for failure to prosecute, pursuant to F.R.Civ.P. 41(b), and from a subsequent order denying a motion to vacate this dismissal. We affirm.

After several years of litigating the same matter in the courts of Greece, the two plaintiff-appellants filed suit July 23, 1965, in the United States District Court for the Northern District of Illinois, seeking $4 million damages from defendant-appellees Thompson-Starrett Co., Inc. and Merritt-Chapman & Scott Corp. The action was based upon an alleged breach of two 1952 contracts pursuant to which the plaintiffs agreed to use their influence to procure certain construction work for the defendants in Greece.

The case was transferred to the Southern District of New York on January 27, 1966, upon the defendants' motion. Answers were served and depositions noticed, and the plaintiffs' depositions were ultimately taken in New York in January of 1967. The plaintiffs then sought depositions from various defendants, the taking of which was also postponed at some length at the defendants' request.

During the latter series of postponements, the action appeared on the district court's regular review calendar call of June 19, 1967, after a year and one-half on its docket. Chief Judge Sugarman conducted a pre-trial hearing and entered an order on June 20 providing that if no note of issue, showing readiness to proceed to a trial, was filed within 150 days, the action might be dismissed without further notice for want of prosecution.[1]

This order specified, however, that a *sua sponte* dismissal would not be ordered if an application was granted within the 150 days extending the allotted time to comply with the condition requiring the filing of a note of issue. By agreement of all the parties, the plaintiffs sought and obtained an extension of the order for 90 days on November 11, 1967. The plaintiffs' petition recited that discovery was incomplete and that it sought an extension of "the 150-day order entered on June 20, 1967 for an additional ninety (90) days."

The 90-day extension of the order expired February 21, 1968; but no note of issue was filed on or before that day. Since nothing had been done, Judge Sugarman recited the terms of his initial

---

1. The review calendar call and order were pursuant to the Southern District's General Rule 23, which states:

    "Causes which have been pending for more than * * * one year * * * and are not on the trial calendar may be called for review upon not less than fifteen (15) days' notice given by the clerk by mail addressed to the attorneys or proctors of record. Notice of the call of such causes shall be published in the New York Law Journal, or otherwise as the court directs. The court may thereupon enter an order dismissing the cause for want of prosecution, or continuing it, or may make such other order as justice may require."

review calendar order of the previous year in a new order dated March 6, 1968, and dismissed the action for lack of prosecution, without prejudice.

On the same day, March 6, the plaintiffs' counsel in Chicago,[2] who contend that they were still attempting to secure a deposition from a defendant before proceeding to trial, wrote to the defendants' counsel in New York City asking compliance with discovery requests for certain documents. There was no immediate answer, and the plaintiffs thereafter did not make further attempts to contact the defendants until August 15, 1968, nearly six months after the expiration of the requested extension of the 150-day order. When one of the defendants' lawyers replied to this second set of discovery requests on August 22, his letter pointed out that the action had already been dismissed. Upon learning this, the plaintiffs' attorneys moved on September 24, 1968, to "reinstate" the cause upon the calendar pursuant to F.R. Civ.P. 60(b). Under the rules of the Southern District, parties whose suits are dismissed customarily are sent postcards noting the filing of an order; and the filing is also reported in the *New York Law Journal*.[3] The plaintiffs' lawyers argued that they had not received a postcard informing them of the March 6th dismissal, and there was no record that a card had been sent.

The district court granted this application for relief from the judgment in an order dated October 10, 1968, which stated:

"The order dated March 6, 1968 is vacated. Time to comply with the

order dated June 19, 1967 is extended for 15 days from this date but only to the extent of filing a note of issue. No procedures under F.R.C.P. 26–37 may hereafter be had."

Once again, the period within which to file a note of issue expired without any action by the plaintiffs' attorneys. The deadline passed October 25, 1968; and in an order dated November 15, the court noted this expiration and dismissed the case with prejudice. Defendants' counsel promptly notified plaintiffs' attorneys of this action on November 20, 1968.

For the second time, the lawyers for Theodoropoulos came forward belatedly with a claim of lack of notice. They filed an application November 25, 1968, seeking an order vacating this second dismissal because they allegedly received no postcard informing them of the 15-day condition upon which their own motion to vacate the first dismissal had been granted. This time they were unable to point to an absence of evidence that a postcard had been sent and conceded that they apparently had lost it.[4] At this time the appellants offered to file a note of issue at once. This application was denied in an order which was dated December 12, 1968, and filed on December 16.

On December 26, plaintiffs' counsel applied for a "rehearing" of their motion to restore the case to the calendar, which was treated by the district court as a motion for reargument under the Southern District's Rule 9(m),[5] which it de-

2. The plaintiffs were represented by a large law firm with sizeable offices in both Chicago and New York, as well as elsewhere. Although the New York office of this firm appeared in the case for the plaintiffs, apparently *de facto* conduct of the pre-trial phases of the litigation remained entirely under the control of Chicago attorneys.

3. See note 1, *supra*.

4. Plaintiffs' counsel noted that an associate involved in the litigation was suffering

from flu during this period and was not in his New York office when the postcard probably arrived there. They also explained that the firm's New York office underwent a change of receptionists, who were responsible for sorting mail, at about this time. Affidavit of Gregor F. Gregorich, Esquire.

5. Southern District Rule 9(m) states: "A notice of motion for reargument shall be served within ten (10) days after the filing of the court's deter-

nied in an order dated April 5, 1969. On May 1, 1969, the plaintiffs filed a notice of appeal from the four orders of March 6, November 15, December 12 and April 5 (two dismissals, a refusal to vacate, and a refusal to grant reargument).

An appeal ordinarily does not lie from an order denying a motion for reargument, Vine v. Beneficial Finance Co., 374 F.2d 627 (2 Cir.), cert. denied 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), in the absence of new matter arising after the original presentation of the argument, see Hines v. Seaboard Airline RR. Co., 341 F.2d 229 (2 Cir. 1965); and of course no appeal is necessary from an order which has been vacated. Thus the first and last orders cited, March 6 and April 5, are not appealable. But the plaintiffs' appeal of the November 15 dismissal was timely, and it also properly brings before us the order denying a motion to vacate it on December 16.

The timeliness of an appeal is a jurisdictional question, Guido v. Ball, 367 F.2d 882 (2 Cir. 1966). In this case the appellants' timely motion to vacate

was the equivalent of a motion under F.R.Civ.P. 59(e) and terminated the running of the time for filing a notice of appeal from November 15 until December 16, F.R.App.P. 4(a); Vine v. Beneficial Finance Co., supra, 374 F.2d at 632; 9 Moore, Federal Practice ¶ 204.12[1], pp. 949–951 (2d ed. 1969). After this, the timely motion for reargument on December 26 further tolled the time to appeal from that date until its denial on April 7. Cf. Hines v. Seaboard Airline RR. Co., supra, 341 F.2d at 232.[6] The May 1 appeal was then taken within the 30 days provided by F.R.App.P. 4(a). There is, therefore, no jurisdictional infirmity which would bar our determination of the issue.

We hold that the district court did not abuse its discretion in dismissing the appellants' suit with prejudice. The dismissal was proper despite the fact that the plaintiffs claim their counsel did not receive actual notice of the relevant orders and thus were unable to file a note of issue within any of the specified times, and despite the absence of a showing of specific prejudice to the defendants. See West v. Gilbert, 361 F.2d 314

mination of the original motion * * *."

6. Professor Moore states applicable case law to hold:

"A motion to *reconsider* an order disposing of a motion of the kind enumerated in Rule 4(a) does not again terminate the running of the time for appeal. An initial motion to reconsider the judgment is a motion under Civil Rule 59(e) and *does* terminate the running of the time for appeal. But a motion to reconsider the reconsideration does not terminate the running of the time for appeal." 9 Moore, Federal Practice ¶ 204.12[1], pp. 951–952 (2d ed. 1969).

We are in general agreement with the philosophy advanced for this position:

"The clear purpose of these rules is to give all parties an opportunity to challenge the judgment at the district court level without enabling them indefinitely to extend litigation by tactical maneuvering in the district court. But if a party who has once sought reconsideration by the district court is permitted to seek reconsideration of its

reconsidered view, and if each motion for reconsideration terminates the running of the time for appeal, litigation at the district court level can be stretched out endlessly." 9 Moore, *supra*, at 952 n. 7.

However, we do not believe it should be applied to a *sua sponte* dismissal for failure to prosecute such as this. In such a case, the explanation for the failure is presented to the district court and passed on for the first time in the form of some type of motion under Rule 59 (e); and a subsequent motion for reargument, such as the one in the case before us, represents a party's only opportunity to call new facts or arguments to the court's attention before taking an appeal. See Hines v. Seaboard Airline RR. Co., 341 F.2d 229, 232 (2 Cir. 1965); see also Vine v. Beneficial Finance Co., 374 F.2d 627 (2 Cir.), cert. denied 389 U.S. 970, 88 S.Ct. 463 (1967); Terrasi v. South Atlantic Lines, Inc., 226 F.2d 823, 824 (2 Cir. 1955), cert. denied 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 855 (1956).

(2 Cir.), cert. denied 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966).

In the case of the first dismissal, appellants' counsel concededly saw the initial 150-day order and expressly asked for a 90-day extension *of this order* while they completed discovery; yet they now maintain that they did not understand the 90-day extension to continue the provision for a *sua sponte* dismissal if no note of issue was filed. This first claim of lack of notice boils down to an assertion that the plaintiffs simply failed to comprehend the terms of their own stipulation with the defendants and should, therefore, be excused for paying no attention to the status of the case until six months after the time for filing expired, making no inquiry, and not noticing an announcement which was presumably published and which did reach the attention of the opposing parties.

Appellants also contend that it was excusable for them to neglect to examine the docket of the case or otherwise take steps to discover what action the court had taken on the motion which they themselves made, seeking to vacate the first dismissal. The only reasons they can suggest for failing to receive actual notice of the fact that it was granted, upon the condition that a note of issue be filed promptly, was that appellants' attorneys lost the postcard notice, or, through error, did not distribute it to the particular members of the law firm who were handling the case. This mistake, combined with the failure to notice the publication in the *New York Law Journal* of the filing of the order, and the neglect in not checking the docket or making any other inquiry until after the 15-day extension had expired, led to the second dismissal. We hold that it was not an abuse of discretion for the court below to order this dismissal with prejudice. It was clearly a case of inexcusable neglect and plainly warranted the denial of the subsequent motion to vacate.

■ The appellants' final contention is that they were misled by the fact that the first dismissal was without prejudice and thus were surprised when the second one was ordered with prejudice. Passing over the implication that this argument may assume that a party possesses a right to act in a dilatory manner unless fair warning is given that a rule will actually be enforced, we note that the sole case on which it is based, Peardon v. Chapman, 169 F.2d 909 (3 Cir. 1948), has no application to the facts before us. In that case, which included a finding that a trial court had led a plaintiff to anticipate nothing more drastic than a dismissal without prejudice and then suddenly changed its mind, the Third Circuit stated:

"Under all the facts, in view of the intimation of dismissal without prejudice and of *a situation thereafter arising less blameworthy than in the first instance,* the dismissal with prejudice of plaintiff-appellant's cause of action was unwarranted." 169 F.2d at 913 (emphasis added).

In the case at bar, the second lapse on the part of plaintiffs' counsel was hardly "less blameworthy" than the breach which caused the initial dismissal. Instead, it was a second and similarly inexcusable failure to comply with an order to move a case toward trial promptly. First the appellants' attorneys forgot or ignored the terms of their own stipulation, and then they lost track of the fact that their motion to vacate the dismissal had been granted. Whether this represented calculated dilatoriness or mere carelessness, dismissal under F.R.Civ.P. 41(b) was proper. "The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." Link v. Wabash RR. Co., 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962).

The orders of the district court are affirmed.