Susie Myers **PERKINS**, Administratrix of the Estate of John David Perkins, Jr., Deceased, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 1:92–1176.

United States District Court,
S.D. West Virginia,
Bluefield Division.

April 7, 1994.

Norris Kantor, Bluefield, WV, for plaintiff.

Stephen Horn, Charleston, WV, for defendant.

### *MEMORANDUM OPINION AND ORDER*

FABER, District Judge.

This civil action was filed under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*, (FTCA). The plaintiff seeks damages for the alleged wrongful death of her husband, John D. Perkins ("Perkins"), who was asphyxiated during the early morning hours of July 21 or 22, 1991, at the Double E Mining No. 1 Mine, Coal Mountain, Wyoming County, West Virginia.

Prior to April 12, 1991, the Double E Mining No. 1 Mine had been operated by Double E Mining, Inc. under a lease from Island Creek Coal Company. The mine ceased production at that time and the property reverted to Island Creek. Island Creek began operations to seal the mine, but was halted in this endeavor by Internal Revenue Service (hereinafter "IRS") Agent Thaddeus Smyth, who indicated that the IRS had obtained a seizure order for mining equipment located underground and had engaged someone to retrieve the equipment so it could be sold in payment of delinquent federal taxes.

In July 1991, Smyth, ostensibly acting within the scope of his employment, entered into a verbal contract with Perkins and Robert Neal to remove the equipment. Perkins, Neal and others began dewatering operations at the mine in an effort to recover the equipment. At approximately 2:00 a.m. on July 21 or 22, 1991, Perkins went into the mine alone after turning off the mine fan, apparently to check on pumps, and was overcome by contaminated air causing his death.

The plaintiff claims that the death of Perkins was due to the negligence of the United States and its agents in numerous particulars, including various violations of federal regulations governing coal mining, 30 C.F.R. §§ 75.300, et seq., and in failure to notify the Mine Safety and Health Administration of operations at the mine designed to recover the mining equipment.

The United States moved to dismiss this action on two grounds. First, that this action is a claim in respect of the assessment or collection of taxes and, therefore, is excepted from waiver of sovereign immunity under the FTCA. Second, that Perkins was an employee of the United States whose sole remedy is under the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101, et seq.

By its Opinion and Judgment Order entered on September 22, 1993, the court granted defendant's Motion to Dismiss, reasoning that this action is a claim in respect of the assessment or collection of taxes which is excepted by 28 U.S.C. § 2680(c) from the waiver of sovereign immunity contained in the FTCA.

Thereafter, within the ten-day period for motions to alter or amend judgments permitted by Rule 59(e) of the Federal Rules of Civil Procedure, plaintiff filed a "motion for reconsideration" and a motion for leave to file an amended complaint.[1]

■ Although the Federal Rules of Civil Procedure do not refer specifically to motions for reconsideration, the cases make clear that such a motion filed within ten days of the entry of judgment is to be considered as a motion to alter or amend that judgment under Rule 59(e). *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167 (5th Cir.1990), *cert. denied*, —— U.S. ——, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993); *Theodoropoulos v. Thompson–Starrett Co.*, 418 F.2d 350 (2d Cir.), *cert. denied*, 398 U.S. 905, 90 S.Ct. 1697, 26 L.Ed.2d 65 (1969); *Foman v. Davis*, 292 F.2d 85 (1st Cir.1961); *rev'd on other grounds*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Plaintiff's motion to reconsider assigned numerous grounds among which were the following: (1) the motion to dismiss was not ripe for decision since discovery was not complete and was continuing; (2) plaintiff had been promised the opportunity to argue orally upon the motion to dismiss before it was decided; (3) plaintiff had learned subsequent to the court's decision that IRS Agent Smyth had been retired "for mental reasons as a result of his conduct in this matter" and "other matters occurring prior to this incident;" (4) plaintiff had also learned that Smyth's immediate supervisor had been retired or demoted as a result of the incident giving rise to this case; and (5) plaintiff now had witnesses[2] who would testify under oath that Smyth and his supervisor had violated

---

[1]. Plaintiff's Motion for Reconsideration was filed on Monday, October 4, 1993; since the tenth day from the date of the court's Judgment Order fell on Saturday, October 2, the motion was timely under Federal Rules of Civil Procedure, Rule 6(a). *Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307 (2d Cir.1970).

[2]. The lengthy affidavit of one of these witnesses, William Jenkins, a former IRS agent, was filed in support of the motion to reconsider.

numerous IRS procedures in this matter and taken actions which were "clearly outside the scope of assessment and collection" of taxes as contemplated by 28 U.S.C. § 2680(c).

Plaintiff's motion for leave to amend her complaint was for the purposes of adding counts based upon the specific alleged misconduct of Smyth and his supervisor and to add as additional plaintiffs Susie Myers Perkins, individually, and her child, Julia Ann Perkins.

■ On February 14, 1994, the court heard oral argument on plaintiff's motions and upon the merits of defendant's underlying motion to dismiss, thereby removing one of plaintiff's objections to the court's prior ruling.[3] Having thoroughly considered plaintiff's post-judgment motions giving plaintiff the benefit of all new matters assigned in support thereof, the court perceives no reason to change its ruling of September 22, 1993, granting defendant's original Motion to Dismiss on the ground that 28 U.S.C. § 2680(c) exempts this case from the waiver of sovereign immunity contained in the FTCA.

■ The United States enjoys sovereign immunity from suits for damages at common law. The Federal Tort Claims Act is a limited statutory waiver of this sovereign immunity. Specifically excepted from the waiver of sovereign immunity under the FTCA is "any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c). Cases decided under this provision in the courts of the United States make clear that this exception is not limited to actions by persons against whom the tax collection efforts are directed. The exception to FTCA jurisdiction applies to taxpayers and third parties alike. *Murray v. United States,* 686 F.2d 1320, 1324 (8th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). In *Capozzoli v. Tracey,* 663 F.2d 654, 658 (5th Cir.1981), the court

pointed out that under 28 U.S.C. § 2680(c), Congress retains sovereign immunity of the United States for any claim "in respect of" the assessment or collection of taxes. "This language," the court said, "is broad enough to encompass any activities of an IRS agent even remotely related to his or her official duties."

The United States Court of Appeals for the Fourth Circuit dealt with this subject in *Broadway Open Air Theater, Inc. v. United States,* 208 F.2d 257 (4th Cir.1953), a case which, while dated, appears not to have been significantly changed by subsequent rulings. In that case, the court held that an action by a corporation and its preferred shareholders to recover assets of the corporation alleged to have been wrongfully paid to the United States in satisfaction of personal tax liabilities of the corporation's principal officers, controlling directors and principal holders of common stock, was barred by 28 U.S.C. § 2680(c). Citing several decisions of the United States Supreme Court on sovereign immunity, the court of appeals pointed out that the sovereignty of the United States raises a presumption against its suability unless such suability is clearly shown. The court held that the liability to suit of the federal government should not be enlarged beyond the specific language of the Act. Thus, the *Broadway Open Air Theater* case, upon its facts, supports the proposition in the *Murray* case that third-party actions, as well as direct actions by the affected taxpayer, fall within the exception contained in section 2680(c). *See also, Interfirst Bank Dallas, N.A. v. United States,* 769 F.2d 299 (5th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986).

The plaintiff would seek to distinguish such cases on the ground that in each of them some property interest of the third party is intertwined with the actual tax collection procedure, and would treat differently situations such as the present where the injured party has no such involvement in, or connection with, the actual collection process.

---

**3.** The court is unconvinced by plaintiff's argument that the present motion is not ripe for decision since discovery is continuing and there are material issues of fact to be resolved. For purposes of this ruling the court has taken all plaintiff's contentions as true and finds there to be no material issue of fact which would justify delaying the court's decision.

No case has been cited by the plaintiff or found by the court which supports such a distinction. The broad proposition that waiver of sovereign immunity is to be strictly construed and that third-party claims are covered by the exemption from such waiver for assessment and collection of taxes contained in 28 U.S.C. § 2680(c) leads the court to conclude that this action is barred by the government's sovereign immunity. The fact that Perkins contracted with the IRS to assist in the collection procedure by removing seized machinery from the mine in question and was directly engaged in this activity at the time of his death is sufficient connection with the assessment and collection of a tax to satisfy the requirement of 28 U.S.C. § 2680(c). Furthermore, all of the allegations of fault on the part of the United States in plaintiff's Complaint relate to alleged acts or omissions of Agent Smyth while directly engaged in efforts to collect taxes by completing the seizure and sale of mine machinery.[4] Under the cases cited above, this would appear sufficient to preserve the immunity from suit of the United States under the section 2680(c) exception to waiver of sovereign immunity contained in FTCA.

Section 2680(c) applies by its express terms to customs agents as well as revenue agents, and cases decided under the statute which involve customs agents are helpful in understanding it. The fountainhead case is *Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984). There, petitioner's art collection had been seized and impounded when petitioner became a suspect in a smuggling investigation. After his acquittal, petitioner's property was returned to him in an allegedly damaged condition. The Supreme Court held that section 2680(c) cut off petitioner's right to sue for damages under the FTCA. The court, with appropriate citations to legislative history, identified three purposes of Congress in creating exceptions to the waiver of sovereign immunity contained in the FTCA: "[E]nsuring that 'certain governmental activities' not be disrupted by the threat of damages suits; avoiding exposure of the United States to liability for excessive or fraudulent claims; and not extending the coverage of the Act to suits for which adequate remedies were already available." *Kosak*, 465 U.S. at 858, 104 S.Ct. at 1525.

Consistent with these purposes, courts have held section 2680(c) to bar suits even where the agents failed to follow their agencies' established procedures, particularly where plaintiff possessed a right to sue the agent individually. For example, in *Solus Ocean Systems, Inc. v. United States Customs Service*, 777 F.2d 326 (5th Cir.1985), revenue agents sold property belonging to petitioner without giving prior notice as required by applicable regulations. The court held that suit was, nevertheless, barred by section 2680(c).[5]

The broad impact of section 2680(c) is further illustrated by *Formula One Motors, Ltd. v. United States*, 777 F.2d 822 (2d Cir. 1985). There, DEA agents impounded plaintiff's automobile and searched it so thoroughly for drugs that they "effectively destroyed" it. The court, holding section 2680(c) to bar suit, refused to make an inquiry as to the reasonableness of the agents' actions, stating:

> [W]e see no basis for reading into section 2680(c) a limitation concerning the reasonableness of the agents' conduct in searching the detained property. The exemption serves to insulate the United States from litigation over precisely such issues. Whether the United States ought to be liable for an excessively damaging means of carrying out a search of detained prop-

---

**4.** The proposed amended complaint adds the charge that Smyth's supervisor was aware of prior misconduct by Smyth and nevertheless failed to control his actions. Again, however, the charged misconduct, insofar as it relates to plaintiff's claim, directly involves action to collect taxes; plaintiff charges that Smyth's superiors failed to remove him from office or to supervise him, thereby permitting him to take the actions which produced plaintiff's damages, all of which were undertaken in an effort to collect taxes.

**5.** If failure to follow established procedures rises to the level of a constitutional deprivation of due process, the section 2680(c) bar may not apply. *Perez v. United States*, 838 F.Supp. 860 (S.D.N.Y. 1993). Here, the misconduct of Smyth and his superiors, taking plaintiff's allegations as true, is tortious, but not violative of the Constitution.

erty is a matter for consideration by Congress. * * * Moreover, we decide only that the officers' alleged conduct does not subject the United States to liability; we have no occasion to consider the liability of the officers.

*Formula One Motors, Ltd.,* 777 F.2d at 284.

The plaintiff relies heavily on *Johnson v. Sawyer,* 980 F.2d 1490 (5th Cir.1992), for the proposition that section 2680(c) does not bar this action, but that case is easily distinguishable. There, Johnson had entered a guilty plea to tax evasion under a plea agreement designed to minimize publicity. After the plea hearing, however, the IRS issued a press release which "went well beyond the provision of the plea agreement and, more significantly, disclosed vital information that was not contained in the records of the court." *Id.* at 1493. The court held that Johnson's FTCA action was not barred by section 2680(c), reasoning that the allegedly tortious acts must bear "a realistic nexus to the functions of assessing or collecting taxes." *Id.,* at 1503. The government argued that such a nexus was present since such press releases were designed to deter potential tax evaders and, therefore, supported general efforts of the IRS to collect taxes. The court reasoned that a more specific connection to collection activities in a particular case is necessary for section 2680(c) to apply. In contrast to *Johnson,* such a specific collection effort is present in the case at bar. Smyth's allegedly wrongful conduct was designed to seize and sell specific property to satisfy a particular tax liability. In *Johnson,* the IRS issued a press release after collection activities in the particular case had been concluded. The press release could be tied only to general activities of the IRS designed to deter tax fraud, not to efforts to collect any particular tax, from a specific taxpayer. *See also, Wilkerson v. United States,* 839 F.Supp. 440 (E.D.Tex.1993), in which the court held there to be a question of fact precluding summary judgment in a case involving alleged improper disclosures and other tortious conduct by IRS agents. Like *Johnson, Wilkerson* involved a much more

tenuous connection between the agents' actions and assessment and collection of taxes than we have here.

In *Cappazoli v. Tracey,* 663 F.2d 654 (5th Cir.1981), the court pointed out that there is a narrow window within which tortious conduct by an IRS agent is sufficiently removed from his official duties of assessment and collection of taxes to be outside the scope of section 2680(c), but at the same time sufficiently within the scope of his employment for the United States to be liable. *Johnson v. Sawyer, supra,* is such a case—the present case is not. Here, if plaintiff has any right of action at all it must be against the IRS agents in their individual capacities for actions taken which were beyond the scope of their official duties.

Most of plaintiff's arguments in support of its contention that the court's Judgment Order of September 22, 1993, should be altered or amended are based on a "newly discovered evidence" rationale—the contention that plaintiff learned, subsequent to the court's prior ruling, the full extent of Agent Smyth's alleged misconduct and his superiors' failure to supervise him properly.

The result here would be no different, however, if the court viewed plaintiff's motion for reconsideration to be a motion under Rule 60(b) for relief from the judgment on the ground of newly discovered evidence. The court has concluded that the full extent of the alleged misconduct of Smyth and his supervisor, which plaintiff apparently only discovered after the Judgment Order was entered, is insufficient to escape the deathblow which section 2680(c) has dealt to plaintiff's FTCA case. The same analysis applied to test the original complaint would prove fatal to the proposed amended complaint as well.

Accordingly, the court declines to alter or amend its judgment entered herein and plaintiff's motion, labeled a motion to reconsider, is **ORDERED** denied.[6]

▬▬ As discussed above, this ruling by the court granting the motion of defendant to dismiss would be no different if plaintiff's

---

6. Plaintiff may, of course, still appeal the court's final judgment order entered herein on September 22, 1993. The time to appeal that Order runs from the date of this Memorandum Opinion

and Order, the court's judgment having been tolled while plaintiff's post-judgment motions herein ruled upon were pending. *Clipper Express v. Rocky Mountain Motor Tariff Bureau,*

motion for leave to amend were granted and the allegations of the proposed Amended Complaint and the supporting Affidavit of William Jenkins were all taken as true. Those allegations are not, in the court's opinion, sufficient to enable plaintiff to evade the impact of 28 U.S.C. § 2680(c) which would still preserve sovereign immunity as a defense. All of the reasons discussed above and the authorities cited in support thereof would compel dismissal of the Amended Complaint as well as the original Complaint. The cases make clear that amendment of pleadings should not be allowed if it would be an empty or useless gesture. *See* 6 Wright, Miller & Kane, *Federal Practice and Procedure,* § 1487. If the proposed amendment cannot withstand a motion to dismiss, the court may deny it. *Asher v. Harrington,* 461 F.2d 890 (7th Cir.1972); *DeLoach v. Woodley,* 405 F.2d 496 (5th Cir.1968). The motion for leave to amend is, accordingly, **ORDERED** denied.

The Clerk is directed to mail certified copies of this Memorandum Opinion and Order to counsel of record.

IT IS **SO ORDERED.**

*Inc.,* 690 F.2d 1240 (9th Cir.1982); *Theodoropoulos v. Thompson–Starrett Co.,* 418 F.2d 350 (2d Cir.), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1697, 26 L.Ed.2d 65 (1969).